# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| CLARENCE R. LOGUE, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHATHAM COUNTY DETENTION ) <br> CENTER; SHERIFF AL ST. ) <br> LAWRENCE; ADMINISTRATOR ) <br> McARTHUR HOLMES; MAJOR ) <br> JOHN WELCHER; PRISON HEALTH ) <br> SERVICES; DOCTOR PEARSON; ) <br> DIRECTOR CONNIE MILES; NURSE ) <br> SIMONS, NURSE BAKER; NURSE ) <br> JANE DOE 1; NURSE JANE DOE 2; ) <br> CORPORAL GRAY; PRIVATE ) <br> JOHNSON,[1] ) <br> ) <br> Defendants. ) | Case No. CV410-240 |

## REPORT AND RECOMMENDATION

Before the Court is Clarence R. Logue's prisoner conditions complaint, filed pursuant to 42 U.S.C. § 1983. (Doc. 1.[2]) The Court

---

[1] In the body of his complaint, Logue also names as defendants all correctional officers referenced in the complaint plus other, unnamed administrative personnel. (Doc. 1 at 4.) In other words, he has elected to offload the naming of proper defendants onto the Court. That is his responsibility, however. The Court will not address any allegations made against defendants who have not been explicitly named in the caption of his complaint.

[2] The Court uses Logue's pagination rather than the CM/ECF screen page numbers.

granted Logue leave to proceed *in forma pauperis* on the condition that he return a Prisoner Trust Account Statement form and a Consent to Collection of Fees from Trust Account form.³ (Doc. 4.) He has returned the two forms, so the case is ready to proceed. (Docs. 5 & 6.)

The Prison Litigation Reform Act ("PLRA") requires federal courts to conduct early screening of all prisoner suits against governmental entities or officials for the purpose of identifying claims that are subject to immediate dismissal as frivolous, malicious, or legally insufficient. 28 U.S.C. § 1915A (courts must identify "cognizable claims" filed by prisoners or other detainees and dismiss claims which are frivolous, malicious, fail to state a claim for relief, or seek monetary relief from a defendant immune from such relief); 42 U.S.C. § 1997e(c)(2) (allowing dismissal on the same four standards provided by § 1915A as to any prisoner suit brought "with respect to prison conditions"). The Court will therefore examine the complaint to determine whether it states a colorable claim for relief.

---

³ Logue is a three-striker, but the Court granted him leave to proceed *in forma pauperis* based upon allegations in his complaint showing 28 U.S.C. § 1915(g) "imminent danger of serious physical injury." (Doc. 4 at 3-5.)

Logue, who was transferred from state prison to the Chatham County Detention Center ("CCDC") for a trial, raises four "claims," all of which relate to the alleged denial of medical care to him while held at the CCDC.[4] (Doc. 1 at 5-18.) He presents a laundry-list of failures by the jail's staff in seeing to his needs.

---

[4] He also alleges that he has been racially discriminated against and racially harassed, but the claim is largely conclusory. (Doc. 1 at 5, 11.) Logue notes that certain African American correctional officers (Johnson and Gray) and an African American doctor (Pearson) treated him unfairly. (Doc. 1 at 5.) While he suggests that no black inmate has been treated in the same manner, he has not offered any facts showing that to be the case. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" under Rule 8 of the Federal Rules of Civil Procedure. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009); *Parker v. Smyrna Police Dept.*, 2010 WL 4540286 at * 2 (N.D. Ga. Oct. 29, 2010) (*sua sponte* dismissing civil rights complaint based on equal protection claim where plaintiff failed to allege "any fact suggesting that he was treated differently based on a constitutionally protected interest such as race, nor has he alleged facts sufficient to move a possible class-of-one equal protection claim across the line from conceivable to plausible) (quotes and cites omitted)

Additionally, he complains of a "racial remark" made during an examination by Dr. Pearson. (Doc. 1 at 12.) An allegation of a run-of-the-mill racial slur or other verbal insult, however, is not cognizable under § 1983. *Edwards v. Gilbert*, 867 F.2d 1271, 1273 n. 1 (11th Cir.1989) ("a petitioner must allege more than that he has been subjected to 'verbal taunts .... however distressing' in order to make a claim that jailers have violated their duty of protection or deprived the petitioner of his constitutional rights"); *Keyes v. City of Albany*, 594 F. Supp. 1147, 1155 (N.D.N.Y.1984) ("[T]he use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim.").

A plaintiff must allege a nonconclusory claim showing that he is entitled to relief. *Rogers v. Nacchio*, 241 F. App'x 602, 607 (11th Cir. 2007); *Lambert v. United States*, 98 F. Appx 835, 839 (11th Cir. 2006) (inmate's conclusory allegations were insufficient to establish a medical malpractice claim). "Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. Here, Logue has offered conclusory averments that do not nudge his racial discrimination claim from merely possible to a plausible entitlement to relief.

Logue alleges that upon arriving at CCDC in September 2010, Pvt. Johnson confiscated his prescription eyeglasses, which were later declared to be lost and have not been replaced.[5] (Doc. 1 at 5.) Since then, the jail's medical staff has consistently refused to provide him with all of the medications he received while in prison, including certain mental health medications, and he has not been provided with his prescribed high calorie diet. (*Id.* at 6.) As a result, Logue has suffered from hearing loss, mental disturbances, indigestion, nausea, bloody stools, and weakness. (*Id.* at 6, 9.) During the worst bout of nausea, he asked Nurse Baker for Malox or Pepto-Bismal, but she refused to provide it. (*Id.* at 12.) Jail staff also refused to allow him a lower bunk when moved to a different cell block, even though he had a medical profile for lower bunks. (*Id.* at 6.)

About a week after Logue's arrival, he sent a letter to Major Welcher requesting that his medications be reinstated. (*Id.* at 8.) Nothing came of the letter, and the jail staff never responded to his daily

---

*Id.* at 1949-50. Accordingly, the claim should be **DISMISSED**.

[5] Logue eventually received a pair of reading glasses but not his prescription lenses. He also claims that his Bible and address book were confiscated. (Doc. 1 at 5.) He has not asked for relief on that score, however. (Doc. 1 at 19.)

4

salvo of grievances and medical requests. (*Id.*) By then, he had also been denied access to a shower and fresh air for a week. (*Id.*) By early October 2010, Logue experienced gastrointestinal bleeding, requiring a trip to the Memorial University Medical Center. (*Id.* at 10.) A doctor who examined him performed several tests but noted that he needed a colonoscopy. (*Id.*) That never happened. (*Id.* at 13.)

During his mandatory physical, administered two weeks into his stay at CCDC, Logue again requested access to his medications, to no avail. (*Id.* at 10-11.) He was seen by Dr. Pearson. (*Id.* at 11.) He showed her his most recent bloody stool. (*Id.*) She said it was nothing, probably just hemorrhoids, though Logue protested that he never had hemorrhoids. (*Id.*) She refused to investigate further. (*Id.*) She also refused to diagnose a "really bad headache" he had developed. (*Id.*) Officer Johnson, who accompanied the doctor, ignored his pleas for help and ordered him to lie down on threat of calling a code. (*Id.*) Logue admits, however, that when the pill call nurse came by, Dr. Pearson had "covered herself" by ordering him Tylenol twice a day for 72 hours. (*Id.*)

The next day, Logue was taken to medical for a liver enzyme check. (*Id.* at 12.) He asked for his glasses and was again rebuffed. (*Id.*) Later

5

in the day, Dr. Pearson consulted with him about his acid reflux and the problems leading to his trip to the hospital. (*Id.*) He asked about the colonoscopy recommended by the doctor at Memorial Heath, but Cpl. Gray said "that probably won't happen." (*Id.* at 13.) Thereafter, Dr. Pearson conducted a rectal exam and "tr[ied] to stick half her fat arm up my rectum." (*Id.*) When he screamed out in pain, she made some derogatory "racial" remark and said that there appeared to be some "ripping." (*Id.*) The correctional officers and medical staff, all African Americans, laughed at him. (*Id.*)

Afterward, he was provided with filthy sheets, towels, and blankets and no washcloth (which he believes caused a lice infestation). (*Id.* at 14.) Again, his grievances and medical request forms were never addressed. (*Id.*) He sent a "formal administrative grievance" to Major Welcher again detailing his concerns and requesting that he be sent to the specialist concerning his internal bleeding. (*Id.*) The next day, the bloody bowel movements started again. (*Id.*) He told Nurse Jane Doe 1, but nothing came of it. (*Id.*) He also submitted another grievance to Major Welcher. (*Id.* at 15.) At a pill call the next day, a nurse told him that Dr. Pearson had diagnosed hemorrhoids, so the blood was to be

ignored, despite his insistence that he did not have hemorrhoids and had lost 40-plus pounds over the last several months. (*Id.* at 16, 14.) That day he was finally provided with reading glasses, though he was still denied his regular prescription eye glasses. (*Id.* at 16.)

On October 10, 2010, Logue finally received his mental health medications. (*Id.* at 17.) According to Nurse Walker, the pill call nurse that day, another nurse, Nurse Simons, had apparently skipped him while pulling medications for distribution. (*Id.*) Simons, the head nurse, is another African American woman who treated Logue with "racial disdain." (*Id.*) The next day, however, Nurse Simons provided Logue with Malox upon his insistent request. (*Id.*) During the next pill call, the nurse provided him with "the missing medications she didn't have in [a] small envelope pill dispenser." (*Id.* at 18)

Based upon these allegations, Logue asks that the Court enter an injunction granting *all* state prisoners medications that have been prescribed to them when sent to any county jail. (*Id.* at 19.) This, of course, should be **DENIED**, as the requested injunction would extend far beyond Logue's present isolated allegations. Should he amend his complaint to seek an injunction regarding his own medical treatment, he

7

is advised that the claim will become moot upon his return to prison. His request to be transferred to Kalispell, Montana for any parole or probation term should similarly be **DENIED**. Logue also requests compensatory and punitive damages. That request merits consideration. The Court will therefore examine his claims as to each of the named defendants.

For the most part, it is unclear whether the defendants named are state, county, or city employees. As for Sheriff Al St. Lawrence, however, he is a state employee. Hence, any official capacity suit against him is, in fact, a suit against the state, and damages claims against states are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) (holding that the Eleventh Amendment prohibits damages suit against state officials acting in their official capacities). As the Eleventh Circuit has explained:

> The Eleventh Amendment to the United States Constitution bars suit in federal court against an "arm of the state," except where such immunity is waived by the state or abrogated by Congress. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). Georgia law recognizes its sheriffs as "arms of the state." *Powell v. Barrett*, 496 F.3d 1288, 1304 (11th Cir. 2007).

*Rylee v. Chapman*, 316 F. App'x 901, 905 (11th Cir. 2009); *West v. Tillman*, 496 F.3d 1321, 1326 n. 7 (11th Cir. 2007). Here, Logue provides

no basis for finding a waiver of sovereign immunity, so his *official* capacity claims against the sheriff fail. (The Court addresses his *individual* capacity claims, below.)

His claims against the Chatham County Detention Center also fail as a matter of law, since the jail has no independent legal existence and therefore is not an entity that is subject to suit under § 1983. *Miller v. Benton County Jail*, 2006 WL 2711482, at *1 (W.D. Ark. Sept. 11, 2006) (county jail not a legal entity subject to suit); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993) (jail not a person or legal entity subject to suit); *Agnew v. St. Joseph County Jail*, 1996 WL 534928, at *1 (N.D. Ind. Aug. 14, 1996); *see Lovelace v. DeKalb Cent. Prob.*, 144 F. App'x 793, 795 (11th Cir. 2005) (county police department not a legal entity subject to suit under § 1983); *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (dismissing claim against sheriff's department because department was not subject to suit under Alabama law).

In sorting through the remaining named defendants, the Court will first consider the supervisory officials and Prison Health Services ("PHS").[6] Sheriff Al St. Lawrence, in his individual capacity, Major

---

[6] "When a private entity like PHS contracts with a county to provide medical

McArthur Holmes, PHS Director Connie Miles, Major Welcher, and PHS are all named solely on their supervisory status over the offending jail officials. Claims brought pursuant to § 1983, however, cannot be based upon theories of vicarious liability or *respondeat superior*. *Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1948 (2009); *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). In order for the claims against them to survive, then, Logue must demonstrate either that these supervisory defendants directly participated in the alleged constitutional deprivations or that there is some other causal connection between the acts or omissions and the alleged constitutional deprivations. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1998) (per curiam). Such a connection may arise "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy result[s] in

---

services to inmates, . . . it becomes the functional equivalent of [a] municipality," *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997), and therefore qualifies as a "state actor" for § 1983 purposes.

deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 362 F.3d at 1360 (internal quotation marks and citations omitted); *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999), *overruled on other grounds by Manders*, 338 F.3d 1328 n.52. Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration....'" *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). Logue has not offered any facts showing direct action or some other causal connection as to these defendants.[7]

---

[7] Nowhere in his complaint does he allege that PHS took any direct action against him. He speculatively alleges, however, that PHS management encourages doctors to cut costs by intentionally misdiagnosing patients. (Doc. 1 at 16.) While such a custom could expose PHS to § 1983 liability, *German v. Broward County Sheriff's Office*, 315 F. App'x 773, 776 (11th Cir. 2009), his one sentence statement to that effect is inadequate to convert his conclusory speculation into a plausible claim. He must offer some facts showing that this policy is pervasive and not merely imagined. *Iqbal*, ___ U.S. ___, 129 S. Ct. at 1949-50 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" under Rule 8 of the Federal Rules of Civil Procedure). While *pro se* pleadings are held to a less stringent standard than pleadings drafted by an attorney, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007); *see Hopkins v. St. Lucie*

While Logue filed grievances and submitted letters (to Major Welcher at least), the defendants' awareness of the deprivations standing alone is insufficient to state a claim against them. Filing grievances with, or sending complaining letters to, a supervisory official does not alone make the supervisor liable for the allegedly violative conduct, even if the grievance or complaint is denied. *See Wayne*, 197 F.3d at 1106; *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1541-42 (11th Cir. 1994) (Kravitch, J., concurring) (plaintiff must show that the supervisor's knowledge amounted to deliberate indifference to the asserted harm or risk, in that his knowledge was "so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights."); *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, the fact that Logue filed grievances and sent a letter to one defendant does not establish the type of direct participation or causal

---

*County School Bd.*, 2010 WL 3995824 at *1 (11th Cir. Oct. 13, 2010) (while a *pro se* litigant's complaint is liberally construed, it still must allege facts stating a Fed. R. Civ. P. 8 claim in compliance with *Iqbal* and *Twombly*); *Williams v. Brown*, 347 F. App'x 429 at 434-35 (11th Cir. 2009) (applying *Twombly* dismissal standards to *pro se* prisoner complaint); *Gadson v. Chatham County Sheriff Dep't*, 2009 WL 1288866 at *1 (S.D. Ga. May 8, 2009) (same).

connection required here. Instead, he must allege sufficient facts demonstrating that the defendants somehow caused or ratified the deprivations, not that they were simply aware of his complaints. He has not done so.

For the remaining defendants, the Court must apply the Eighth Amendment standard for determining whether each claim of medical deprivation amounts to cruel and unusual punishment. A plaintiff must satisfy both an objective and subjective inquiry. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). First, he must set forth evidence of an objectively serious medical need. *Farrow*, 320 F.3d at 1243; *Taylor*, 221 F.3d at 1258; *Adams*, 61 F.3d at 1543. Second, he must show that the prison official acted with an attitude of deliberate indifference to that serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Farrow*, 320 F.3d at 1243; *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999); *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999). And as is true in all tort actions, the plaintiff must also establish that the prison official's

indifference caused his injury. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007).

Turning to Pvt. Johnson, the only conceivable claim against him is that he deprived Logue of his prescription eyeglasses.[8] (Doc. 1 at 5.) The Court is satisfied that he had a legitimate medical need for the glasses, as they were prescribed. Moreover, Johnson allegedly broke one pair of glasses and confiscated the other. (*Id.* at 5, 7.) The jail, however, later procured a pair of similar plastic reading glasses, and Logue's glasses were actually provided to him by the jail before he transferred to prison. Construing his pleadings liberally, Logue alleges that Johnson deprived him of his glasses for no reason other than to cause discomfort. Moreover, Logue suffered from headaches, likely resulting from the deprivation. The Court is thus satisfied that Logue has stated an Eighth Amendment claim for relief against Pvt. Johnson. *See Neal v. Bolton*, 2008 WL 5156685 at *18 (N.D. Fla. Dec. 9, 2008) (recognizing claim for deprivation of prescription eyeglasses where it caused plaintiff pain and possible deterioration of vision); *see also Wheeler v. Butler*, 85 F.3d 86, 88

---

[8] Logue also suggests that Johnson subjected him to racial harassment, but that claim is a nonstarter. *See* note 4 *supra*

(2nd Cir. 1996) (prisoner's alleged medical need for prescribed eyeglasses to avoid double vision and loss of depth perception that resulted from prior head injury was sufficiently serious to support his claim that prison officials' deprivation of prisoner's glasses violated Eighth Amendment); *Mitchell v. Maynard*, 80 F.3d 1433, 1439, 1443 (10th Cir. 1996) (removal of prescription eyeglasses from a prisoner, along with other deprivations, "could constitute a violation of his right to be free of cruel and unusual punishment[]"; his eyeglasses "were not returned to him for two months, during which time he suffered severe headaches due to his visual condition of presbyopia and the poor lighting in his cell.").

The Court is also satisfied that Logue has stated a claim against Dr. Pearson and Nurse Baker. Dr. Pearson allegedly denied him necessary medication, refused to authorize a visit to a specialist, and intentionally caused him pain during an unnecessary rectal examination. (Doc. 1 at 13.) Nurse Baker allegedly denied him access to any antacid to help stop his vomiting and nausea. (*Id.* at 6, 12.) Logue's claims against the remaining defendants, however, fail. He has not even mentioned Nurse Jane Doe 2 in his factual narrative, so the Court cannot determine

whether he states a claim against her.⁹ As to Nurse Jane Doe 1, he only alleges that he told her about a bloody bowel movement, and she said she would report it. (*Id.* at 14.) He does not allege that she failed to report it or that she took any other action that caused him injury. Hence, the Court can neither find that she acted with deliberate indifference nor that her failure to report the bowel movement caused him harm. Similarly, while Nurse Simons is in charge of "pulling meds" for the inmates, Logue has not suggested that she intentionally skipped him. (*Id.* at 17.) Indeed, when advised of the problem by another nurse, his medications were resumed. (*Id.*) She also provided Malox during a triage session. (*Id.*) Hence, his allegations against Nurse Simons, without further factual development, raise a claim of negligence, not deliberate indifference. An Eighth Amendment action requires considerably more than that.¹⁰ *See Goebert*, 510 F.3d at 1326 (the

---

⁹ He discusses several unnamed nurses throughout his factual narrative but only identifies one of them as Jane Doe. (Doc. 1 at 14.)

¹⁰ This action technically arises under the Fourteenth Amendment, since plaintiff is a pre-trial detainee. Plaintiff's custodial status is of no significance to the Court's analysis, however, because "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner." *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Hamm v. DeKalb County*, 774 F.2d 1567, 1572-74 (11th Cir. 1985) ("states may not impose on pretrial detainees conditions that would violate a convicted prisoner's eighth

subjective component of the *Farmer* deliberate indifference test requires more than even gross negligence).

For all of the reasons explained above, Logue's claims against CCDC, Sherriff Al St. Lawrence, Major McArthur Holmes, Major Welcher, PHS Administrator Connie Miles, PHS, Nurse Jane Doe 1, Nurse Jane Doe 2, Nurse Baker, and Cpl. Gray should be **DISMISSED WITH PREJUDICE**, and the Clerk should be **DIRECTED** to strike their names from the docket. Similarly, Logue's requests for an injunction or a transfer to Montana should be **DENIED**. Logue's damages claims against Pvt. Johnson, Dr. Pearson, and Nurse Baker survive initial review. Accordingly, the Clerk is **DIRECTED** to forward a copy of Logue's complaint and this Report and Recommendation to the United States Marshal for service upon those defendants.

As a final matter, Logue moves for appointment of counsel. (Doc. 7.) As a general rule, however, there is no entitlement to appointed counsel in a civil rights action brought pursuant to 42 U.S.C. § 1983.[11]

---

amendment rights").

[11] The preeminent generalization that emerges from the Eleventh Circuit's precedents on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation. *Lassiter v. Dep't of Soc. Serv's*, 452 U.S. 18, 25 (1981). An action filed

*Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990); *Wahl v. McIver*, 773 F.2d 1169, 1172 (11th Cir. 1986); *Hardwick v. Ault*, 517 F.2d 295, 298 (5th Cir. 1979); *see also Thomas v. Estelle*, 603 F.2d 488, 489 (5th Cir. 1979.). Court-appointed counsel in civil actions is warranted only in exceptional cases. *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996); *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993); *Fowler*, 899 F.2d at 1096; *see Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). In considering whether exceptional circumstances exist, the Court should consider (1) the type and complexity of the case; (2) whether the indigent is capable of presenting his case; (3) whether the indigent is in a position to investigate the case adequately; and (4) whether the evidence will consist largely of conflicting testimony as to require skill in presenting the evidence and in cross-examination. *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982). However, the key is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the

---

under 42 U.S.C. § 1983 is civil in nature and does not affect a plaintiff's physical liberty, so the stringent standards of appointment and effective assistance of counsel mandated by the Sixth Amendment and Federal Rule of Criminal Procedure 44 do not apply in civil proceedings. *See United States v. Rogers*, 534 F.2d 1134 (5th Cir. 1976). Thus, the appointment of counsel is required only where necessary to insure "fundamental fairness" in accordance with the due process clause of the Fourteenth Amendment. *Lassiter*, 452 U.S. at 26.

court. Where the facts and issues are simple, he or she usually will not need such help. *Kilgo*, 983 F.2d at 193.

Here, Logue has had no difficulty in explaining the facts of his case and has even managed to survive the § 1915(g) three-strikes bar. He needs no help in presenting his claim. Consequently, Logue's motion for appointment of counsel (doc. 7) is **DENIED**.

**SO REPORTED AND RECOMMENDED** this  29th  day of December, 2010.

/s/ *signature*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA