# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

CLARENCE R. LOGUE, JR.,  )
                                          )
     Plaintiff,                   )
                                          )
v.                                        )    Case No. CV410-240
                                          )
DOCTOR PERSON; NURSE    )
BAKER;[1] and PRIVATE JOHNSON, )
                                          )
     Defendants.                 )

## REPORT AND RECOMMENDATION

Civil rights plaintiff Clarence R. Logue seeks to amend his complaint to correct names and add defendants. (Doc. 14.) He also moves for a default judgment. (Doc. 15.) The motion to amend is granted, but Logue's new claims should be dismissed. The motion for a default judgment is denied.

---

[1] In the Court's prior Report and Recommendation ("R&R"), it confusingly directed the Clerk to dismiss Nurse Baker but to also serve the complaint upon her, since Logue's claim against her survived initial review. (Doc. 9 at 17.) From the body of the complaint, it is clear that the Court meant to dismiss Nurse Simmons, not Nurse Baker. The Clerk caught the error, terminating Nurse Simons and serving Nurse Baker as the Court intended. The R&R has since been adopted, so the Court will not vacate or amend it. The Clerk, however, is **DIRECTED** to note on the docket that the R&R contained a clerical error: the effect of page 17 was to dismiss Nurse *Simons* and to serve Nurse *Baker*.

At this stage of the proceedings Logue is permitted to amend his complaint as a matter of course. Fed. R. Civ. P. 15(a)(1). Logue, however, is proceeding *in forma pauperis*, so the Court must screen the new claims under 28 U.S.C. § 1915A.[2] His name correction -- "from Dr. Pearson to Dr. Person" -- survives screening and the Clerk shall change the docket to so reflect. His new claims, however, fail to state a claim for relief as to the new defendants and must be dismissed.

At the outset, Logue again seeks to hold the jail and medical supervisors liable for the actions of their subordinates. The Court already explained that such claims fail absent direct participation of the defendants or a showing of some other causal connection. (Doc. 9 at 10, citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003); *see id.* (citing *Ashcroft v. Iqbal* ___ U.S. ___, 129 S. Ct. 1937, 1948 (2009) (claims pursuant to § 1983 cannot be based on vicarious liability or *respondeat*

---

[2] The Prison Litigation Reform Act ("PLRA") requires federal courts to conduct early screening of all prisoner suits against governmental entities or officials for the purpose of identifying claims that are subject to immediate dismissal as frivolous, malicious, or legally insufficient. 28 U.S.C. § 1915A (courts must identify "cognizable claims" filed by prisoners or other detainees and dismiss claims which are frivolous, malicious, fail to state a claim for relief, or seek monetary relief from a defendant immune from such relief); 42 U.S.C. § 1997e(c)(2) (allowing dismissal on the same four standards provided by § 1915A as to any prisoner suit brought "with respect to prison conditions").

*superior*).) Logue still hasn't come close to showing such a connection. He states that Prison Health Services Director Connie Miles "had constructive knowledge" of the injuries caused him by Dr. Person. (Doc. 14 at 2.) Major John Wilcher, the Assistant Jail Administrator, was "on notice" based upon the "many grievances" he received. (*Id.* at 3.) The Court has already denied these *exact* claims:

> While Logue filed grievances and submitted letters (to Major Welcher at least), the defendants' awareness of the deprivations standing alone is insufficient to state a claim against them. Filing grievances with, or sending complaining letters to, a supervisory official does not alone make the supervisor liable for the allegedly violative conduct, even if the grievance or complaint is denied. *See Wayne*, 197 F.3d at 1106; *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1541-42 (11th Cir. 1994) (Kravitch, J., concurring) (plaintiff must show that the supervisor's knowledge amounted to deliberate indifference to the asserted harm or risk, in that his knowledge was "so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights."); *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, the fact that Logue filed grievances and sent a letter to one defendant does not establish the type of direct participation or causal connection required here. Instead, he must allege sufficient facts demonstrating that the defendants somehow caused or ratified the deprivations, not that they were simply aware of his complaints. He has not done so.

(Doc. 9 at 12.)  Logue still has not met his burden as to those defendants. Hence, his renewed claims against them fail and they should again be dismissed from the case.

Logue also raises failure-to-protect claims against Corporal Gray and Nurse Adams.  (Doc. 14 at 2.)  He states that they were present and joking with Dr. Person as she "shov[ed] her arm up his rectum" and tore his sphincter muscle.  (*Id.* at 1-2.)  While they may have made hurtful comments towards him, he still has not met the burden of pleading a failure-to-protect claim.  That is, while he may have endured conditions "posing a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), he has not shown that they were deliberately indifferent to that harm.  *Id.* at 835.  He has not shown anywhere in his amended complaint that the nurse and guard realized that the procedure the doctor was performing was likely to cause him harm but did nothing to stop it.  *Id.*

This is not a case where one guard failed to stop unnecessary physical violence against an inmate by another guard.  Instead, a guard and a nurse were present while a doctor performed a routine medical procedure in an allegedly un-routine manner.  It would take a trained

eye to see that the procedure was being performed in an unusual manner for the very purpose of causing harm. According to Logue's amended complaint, they would not have been on notice of the harm until Dr. Person admitted that she had torn a muscle, after the harm had already occurred. (*Id.* at 2.) And even if they had some reason to believe that the doctor was harming Logue before her alleged admission, Logue has not suggested any steps they might have taken to prevent the harm. Any reasonable person would be hesitant to wrench a doctor away from a patient mid-rectal exam. Indeed, any movement may have caused further harm. Logue's claims against Gray and Adams for failing to protect him from Dr. Person fail.

Logue also attempts to resurrect his racial discrimination claims against Dr. Person, Cpl. Gray and Nurse Adams. Again, the Court has addressed these very claims:

> Logue notes that certain African American correctional officers (Johnson and Gray) and an African American doctor (Pearson) treated him unfairly. (Doc. 1 at 5.) While he suggests that no black inmate has been treated in the same manner, he has not offered any facts showing that to be the case. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" under Rule 8 of the Federal Rules of Civil Procedure. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009); *Parker v. Smyrna Police Dept.*, 2010 WL 4540286 at * 2 (N.D. Ga. Oct. 29, 2010) (*sua sponte* dismissing civil rights

complaint based on equal protection claim where plaintiff failed to allege "any fact suggesting that he was treated differently based on a constitutionally protected interest such as race, nor has he alleged facts sufficient to move a possible class-of-one equal protection claim across the line from conceivable to plausible) (quotes and cites omitted)

Additionally, he complains of a "racial remark" made during an examination by Dr. Pearson. (Doc. 1 at 12.) An allegation of a run-of-the-mill racial slur or other verbal insult, however, is not cognizable under § 1983. *Edwards v. Gilbert*, 867 F.2d 1271, 1273 n. 1 (11th Cir. 1989) ("a petitioner must allege more than that he has been subjected to 'verbal taunts .... however distressing' in order to make a claim that jailers have violated their duty of protection or deprived the petitioner of his constitutional rights"); *Keyes v. City of Albany*, 594 F. Supp. 1147, 1155 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim.").

A plaintiff must allege a nonconclusory claim showing that he is entitled to relief. *Rogers v. Nacchio*, 241 F. App'x 602, 607 (11th Cir. 2007); *Lambert v. United States*, 98 F. App'x 835, 839 (11th Cir. 2006) (inmate's conclusory allegations were insufficient to establish a medical malpractice claim). "Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. Here, Logue has offered conclusory averments that do not nudge his racial discrimination claim from merely possible to a plausible entitlement to relief. Id. at 1949-50.

(Doc. 9 at 3 n.4.) His new allegations add nothing. He still has not offered any *facts* showing that black inmates are treated differently. (Doc. 14 at 1-2.) And the racial remarks are still non-starters for the same reasons explained above. Hence, those claims still fail.

Next, Logue claims that he was denied access to the courts since Officer Johnson deprived him of certain "much needed addresses," and denied his right to religious freedom since he confiscated Logue's Bible. (Doc. 14 at 3.)

While a detainee enjoys a constitutional right to "adequate, effective, and meaningful" access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977), restrictions are not of constitutional significance unless the detainee can show that the interference caused him significant harm or prejudice. *See Sowell v. Vose*, 941 F.2d 32 (1st Cir. 1991) (where a prisoner's access to legal materials is restricted in some manner, but not absolutely blocked, he must demonstrate actual harm as a prerequisite to recovery); *Chandler v. Baird*, 926 F.2d 1057, 1062 (11th Cir. 1991) (plaintiff must show injury or prejudice in cases involving minor restrictions on access to legal materials). Logue has not alleged any harm or prejudice, so that claim fails.

As for Johnson's confiscation of his Bible (doc. 14 at 3; doc. 1 at 8-9), Logue states only that the confiscation violated his "freedom to practice his religious beliefs." (Doc. 14 at 3-4.) While Courts are incredibly sensitive to the religious practices of inmates, *see Turner v.*

*Safley*, 482 U.S. 78, 89 (1987), Logue's claim is simply too conclusory to survive. He has not offered any facts showing the sort of deliberate discrimination or inherently discriminatory rules required to state religious freedom claims under § 1983. *See Walker v. Blackwell*, 411 F.2d 23, 25 (5th Cir. 1969). That is, he has not offered any facts indicating that Johnson took the Bible because of Logue's religious beliefs or that the confiscation was pursuant to some religiously biased jail policy or regulation. Nor does he allege that it actually interfered with his religious practices. As explained above, such conclusory allegations simply do not state a claim for relief. *Rogers*, 241 F. App'x at 607; *Lambert*, 98 F. App'x at 839 (inmate's conclusory allegations were insufficient to establish a medical malpractice claim). So his claim as to the Bible fails.

Finally, Logue moves for a default judgment against defendants. (Doc. 15.) Federal Rule of Civil Procedure 55 allows a court to enter a default judgment upon application of a party when the opposing party has failed to plead or otherwise defend. Fed. R. Civ. P. 55(b)(2). The Rule presupposes that the party was actually served. While Logue states that more than twenty days have elapsed since the defendants were

served, the record does not support his claim. The Clerk prepared the forms for service on February 3, 2011. (Doc. 13.) No service return has been received; hence it is still in the Marshal's hands. Accordingly, the motion is without merit.

For all of the reasons explained above, Logue's motion to amend (doc. 14) is **GRANTED**, but all of his new claims and parties should be **DISMISSED** pursuant to 28 U.S.C. § 1915A. His motion for a default judgment (doc. 15) is **DENIED**.

**SO REPORTED AND RECOMMENDED** this   2nd   day of March, 2011.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA