UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2012 APR 12 AM 9:10
CLERK B. West
SO. DIST. OF GA.

CLARENCE R. LOGUE, JR.,
Plaintiff,
vs.,
PRIVATE JULIUS JOHNSON,
Defendant,

CIVIL ACTION NO:
4:10-cv-00240-WTM-GRS

# PLAINTIFF LOGUE'S CONSOLIDATED MOTION IN OPPOSITION OF DEFENDANT JOHNSON'S MOTION FOR SUMMARY JUDGMENT

I. Record requested by the Plaintiff to be considered by the Court;
II. Disputation of Affidavit of Julius Johnson;
III. Disputation of Affidavit of Julie Mitchell;
IV. Opposition to Defendant Johnson's Statement of Material Facts;
V. Plaintiffs Statement of Material Facts;
VI. Argument and Conclusion of Law.

## I.

Pursuant to Rule 56 of Federal Rules of Civil Procedure, Plaintiff respectfully requests this Court to consider the following:

1. The pleadings and records filed in this action;

2. The deposition transcript of Clarence Logue, filed by Defendant;

3. The Defendant Johnson's response to Plaintiff's first set of interrogatories, and request for production of documents, incorporated herein by reference, see EXHIBIT A

4. The affidavit of Julius Johnson, incorporated herein by reference;

5. The affidavit of Julie Mitchell, incorporated herein by reference,

6. Plaintiff Clarence Logue's brief in support of his opposition of Defendant Johnsons motion for Summary Judgment.

II.

Plaintiff agrees with portions numbered 1. and 2. of Defendant Julius Johnsons affidavit as being true statements. As for number 3. Plaintiff states that this statement is not true. On Sept. 16th 2010, Defendant Johnson transported Clarence Logue and James McGloghlin from Georgia State Prison, in Reidsville, Ga. to the jail in Savannah, Ga. Defendant Johnson did not transport these two inmates from Rutledge State Prison to the jail in Savannah, Ga as he stated in his sworn affidavit, And this statement should be seen by the Court as giving false information. James McGloghlin was incarcerated at Hayes State Prison prior to be transported to G.S.P. in Reidsville, Ga. by the Ga. Dept. of Corrections (G.D.C). And Clarence Logue was also transported to G.S.P. by G.D.C. where Defendant Johnson did pick both of these inmates up to be transported to the Jail in Savannah Ga.

Also, in number 4. Defendant Johnson states that he seized two pair of eyeglasses and that one pair had a broken handle. This statement is not true. Had the eyeglasses been broke prior to Defendant Johnson seizing them at the jail, G.D.C. would have confiscated them prior to Logue being sent to G.S.P. in Reidsville, Ga. Before he left Rutledge State Prison Logue states that he was searched, and that the eyeglasses were not broke until after they left his possession at the jail and were seized by Defendant Johnson.

It is seen by the Plaintiff that Defendant Johnsons statement in number 5. or false also where he states that he "... was also unaware as to the whether or not either pair of eyeglasses were prescribed by a doctor." I base this fact on the following to wit: First, Defendant Johnson swears that he is "..competent to testify to the matters stated herein" and that he has "... worked at the Chatham County Sheriffs Department ~~as a transport~~ cs for six years, As a transport officer, ..." There is only one design for eyeglasses used by G.D.C. It is well known that if you have bi-focal glasses that they must be prescribed by a doctor. The state issued eyeglasses that were seized from me by Defendant Johnson were in fact bi-focals. Defendant Johnson deals with state prisoners on a weekly basis. I am confident to say that he must have Knowledge that, one, he is very familiar with the design of pescribed state issued eyeglassess, and two, that he knows that bi-focals are prescribed by a doctor, Especially bi-focals that are tinted, in a state-issued design.

Plaintiff Logue has always contended that Defendant Johnson's actions were done in an intentional manner to cause him harm. Therefore, he claims that his statement in number 6. is not true.

Plaintiff Logue referenced Defendant Julius Johnsons sworn affidavit seen as exhibit A of his motion for Summary judgment in this statement to oppose.

III.

Plaintiff agrees with portion 1. and 2. of Julie Mitchell's affidavit as being true statements. Also, Plaintiff agrees that number 3. is true. And observes number 4. including Exhibit 1 to be used in reference to oppose Defendant Johnsons motion for Summary judgment.

First, all the events that took place while I, the Plaintiff, should be stated concerning the statement in number 3. Lt. Mitchell should have elaborated on since she included Incident reports of I/M D.R served on Sept. 22, 2010. And Incident reports of my defects while being held in Unit 2 D- Inmate segregation.

On Sept. 22, 2010, I was moved from unit-1-C to Unit-1-D, and told by Pvt. Kellogg to go into cell 56. I had an argument with the I/M Jerome Williams and to not get in a fight I told pvt Kellogg to move me out of that cell. When Cpl Carpenter came into the unit he moved me to cell #55. I then told both Pvt. Kellogg and Cpl. Carpenter that I had low bunk and low stairs profiles from prison and refused to go into cell #55 because it was upstairs. I was then transported to Unit 2-D, Lock Down.

The Important issue that I failed to mention above is that on that very morning, I could not hear anything - I had lost all my hearing overnight. I do not know why this happened. I suspect it was because I was deprieved of all medications upon arriving at C.C.D.C. And because I was not receiving any of my mental health medication either, I was very irrational and explosive. I couldn't hear and noone would listen - <u>or care</u>. I complained about this at the I.D.R. hearing; And complained to Unit 2-D officers to no avail. Cpl Carpenter mentions this in his Incident Report. My point being that Lt. Mitchell shows eleven more Incident Reports that state I refused to prepare for morning cell inspection. The problem here is that I could not hear the morning wake-up to prepare for the morning inspection. I complained to Sgt. Meeks but nothing changed. For over one week I was denied showers and/or rec. time. because of this medical problem. Since Lt Mitchell included all of these reports it should be clarified that my failure to abid by unit 2-D rules was not intentional.

And that these Incident Reports have no relevant value in regards to the genuine issue at hand.

Number 5. of Lt. Julie Mitchell's affidavit states that she, "reviewed the records concerning all grievances filed by Mr. Logue during his detention at the jail beginning on Sept. 16, 2010 and ending on Dec. 20, 2010." The Plaintiff has stated in his complaint and all along that the Defendants have sabotaged his attempts to utilize the Administrative grievance procedure by only answering grievances they can minipulate and control! Or, grievances that they did answer, as in this case, could not be used against them in a court of law efficiently

Plaintiff has said all along this case that the Administrative grievance procedure at C.C.D.C. is futile. I have also said all along that I filed many more grievances than the two that C.C.D.C. answered, and, did keep copies of some of these grievances, see Exhibit A. Because of the headaches, the mental duress, and the stress caused by the claims stated in the complaint, Plaintiff states that he could have, and probibly did submit a grievance on Defendant Johnson and the Hispanic officer for taking and not returning his eyeglasses but does not remember for sure. I do know that once I received the response on the answered grievance, I appealled CCDC's and Lt Mitchell's decision and my request to appeal was denied.

This brings into question the reliability of having an appeal at the Administrative level. The I.D.R I received on Sept. 22, 2010, was appealed at the Administrative level, I was charged for the appeal although the appeal never took place.

Plaintiff claims that his grievances were a futile attempt to gain releif.

The Plaintiff claims that the above stated facts contradict the statements made in numbers 5., 7., and 8. of Julie-Mitchell's affidavit, showing her statements are not all completely true.

The Plaintiff referenced Julie Mitchell's sworn affidavit seen as exhibit B of Defendant Johnsons motion for summary judgment in this statement to oppose.

## IV.

The Plaintiff, Clarence Logue opposes Defendant Johnsons Statement of Material Facts showing herein that his statements in numbers 4., 10., 12., 13., 15., 16., 17., 18., 19., 26., 25., 29., 31., 33., and 34. are false and/or incomplete in relevance; And the Plaintiff further explains why by each numbered statement:

**4.** statement is completely false in that Deputy Johnson transported inmates Logue and McGloghlin (or McGlaughlin) from Georgia State Prison ~~(G.D.C.)~~ (G.S.P.) in Reidsville, Ga. to (C.C.D.C.) the jail in Savannah, Ga. see above section II.

**10.** Deputy Johnson did not allow Mr. Logue to keep any pair of eyeglasses and when he seized both pair of eyeglasses, neither pair were broken. They were broken after he seized them, see above section II.

**12.** Plaintiff agrees that Deputy Johnson did not have knowledge of his health conditions at that time. But claims that he should have known that the bi-focal, state-issued eyeglasses could only be obtained by a physicians prescription. Therefore Plaintiff states by the facts stated in section II, This statement is false.

13. Plaintiff states that this statement is true but is incomplete in relevance. To use this reference of Logue's Deposition, p. 28 Defendant only used part of Logue's answer and excluded the heart of the answer where Logue concluded that "... And he [Defendant Johnson] was the one in control of my glasses, so he could be the only one that could have broke them."

15. Plaintiff clarifies this statement. Defendant's question:
Q Okay. And so you've, I guess, complained about these headaches to doctors over the years and you don't --
A To eye doctors at Coastal Prison and the eye doctor here.

16. Plaintiff states that he did testify that no doctor has made a definite diagnosis as to the cause of the headaches h has suffered (Depo, Logue pp 25-26). But claims that this conclusion is incomplete because in his research he has discovered that sunlight causes headaches, and that this is one of the symptoms of Colitis. see (Depo, Logue p. 23)

17. Plaintiff states that this statement is true but incomplete. The question was "...did you witness someone destroying your glasses?" My response was, "No", and I did state that Julius Johnson told me I couldn't have them because they were broken. I went on to say "...And he was the one who was in control of my glasses, so he could be the only one that could have broke them." To further explain - I was in the holding cell and I could not see him going through my property. See above section II.

18. This statement is true but is not relevant to complaint. The facts can be seen above in section III as to oppose.

19., 25., 26., and 29. Plaintiff states that these numbered statements are opposed, see above section **III**.

33 and 34. Plaintiff opposes these two statements as being false.

## V.

Clarence Logue, the Plaintiff, pursuant to Local Rule 56.1 shows the Court the following:

1. At all times relevant to this action, Clarence Logue was in the custody of Chatham County Detention Center, (C.C.D.C.), the jail in Savannah, Ga. between the dates of September 16, 2010, and December 20, 2010. As a state inmate pending criminal charges there.

2. Prior to being transported, Rutledge State Prison officers searched Clarence Logue and then G.D.C. (Georgia Dept of Correction), officers did transport him to G.S.P. (Georgia State Prison) in Reidsville, Ga. on September 16, 2010. This process took about twelve hours.

3. On September 16, 2010, at about 3 or 4 p.m. Clarence Logue and another state inmate, James McGlaughlin or, McGloghlin, (spelling unknown) were transported by Deputy Johnson to C.C.D.C. in Savannah, Ga. There were two cars used, another inmate (name unknown) rode with the other Chatham Co. Deputy, (name unknown). These two deputies drove at speeds in excess of 90 M.P.H.

4. Upon arriving at C.C.D.C, Clarence Logue and James McGlaughlin's property were seized and they were placed in a holding cell together, the other inmate was seperated. Deputy Johnson processed Logue and McGlaughlin into the Jail.

5. Deputy Johnson testified that he did not recall the specific type of glasses that he confiscated. (1st Itr. p.2).

6. Deputy Johnson testified that he has worked at C.C.D.C. as transport officer for six years. (Aff. ¶2).

7. Deputy Johnson testified that he has known Logue since approximately 2007. (1st Itr. p. 2).

8. When Logue was called out of the holding cell at G.S.P. to be transported to the jail by Deputy Johnson, the first thing he said was, "what happened to you? You've lost alot of weight." and, "You've gone downhill". He saw that Logue was also using tinted bifocal eyeglasses. Logue informed him that he was sick and that he did not know what was wrong with him.

Deputy Johnson has seen Logue periodically at C.C.D.C. since his 2007 arrest until he was sent to prison in June of 2010, and knew that Logue worked out and kept in good shape. When he saw him at G.S.P. in 2010, Logue had lost 50 pounds, and was told that he had to use tinted glasses because he was sensitive to light.

9. On September 16, 2011, Deputy Johnson was served with a Personnel Conduct Report for, failure to comply with Departmental Policy: Work Rules-General (Neglect of Duty), that resulted in a letter of reprimand being placed in his permanent file. see, (1st RPD #1).

10. Deputy Johnson evaded answering question #11 of the first set of Interrogatories. (1st Int. p. 3).

11. Deputy Johnson testified that he transported Clarence Logue from Rutledge State Prison to the Jail in Chatham County. (Aff. Johnson ¶ 3)

12. Lt. Julie Mitchell testified that she reviewed the records concerning all grievances filed by Mr. Logue. (Aff, ¶ 5, Mitchell).

13. On Grievance # 10-10-0944-2, Lt. Julie Mitchell did not allow inmate Logue to appeal to the administrative level. see, (Aff. Mitchell, Exhibit 2)

14. Inmate Logue was not allowed to appeal to administrative level the I.D.R. he received on September 22, 2010 but he was charged on his inmate account for said appeal that he did request. (I.D.R. of 09-22-10).

15. Clarence Logue submitted up to (12) tweelve grievances starting on or about September 16, 2010, and ending in November, 2010. Some of these he retained photo-copys of as seen in Exhibit A.

16. Clarence Logue sent the September 30, 2010, grievance # 10-10-0944-2 to Major John T. Wilcher accompanied by a personal letter of complaint. See, EXHIBIT B. At the end of this letter he states that he is "... being personally injured - MANY Requests - No response. This is my 2nd letter to you." As seen in exhibit A some requests were wrote as grievances because the officers refused to provide him with the correct forms. He is confident he sent a grievance with the first letter to Major Wilcher with no response.

17. Clarence Logue has claimed that he was under great mental duress in the said pending criminal charges against him due to all the claims in this complaint and appeared before the Chatham County Superior Court on September 20, 2010; he explained to him then facts concerning his loss of hearing and being denied his needed medications. The Court recognized this and ordered him to remain at C.C.D.C. until his next trial date. see,-(Court order, EXHIBIT **B**).

18. On October 11, 2010, Clarence Logue sent a letter of complaint to the Director of Accrediation for the National commission of Correctional Health Care. It is unknown if they ever responded to this letter, See, (EXHIBIT **B**).

19. On about November 22, 2011, while in the Columbus Regional Hospital due to severe gastric intestinal bleeding, Clarence Logue was diagnosed with Ulcerative Colitis. While he was there one of the nurses gave him information on this chronic disease. It shows that symptoms such as sensitivity to light, blurred vision, and headache may occur. See, (EXHIBIT **C**).

20. On December 22, 2011, and again on February 2, 2012, Deputy Johnsons attorney requested medical records from the Columbus Regional Hospital, and from Rutledge State Prison. On January 25, 2012, Clarence Logue received a request for the Authorization for Disclosure of Health Information. He signed this and returned it to the Chatham County Attorney's office with a letter requesting respectfully for this attorney to provide me with a copy of my medical files. To this date I have not received any medical records; Even though I requested them also (EXHIBIT **C**.)

# VI.
## ARGUMENT

The standards for summary judgment are well settled. The moving party bears the burden of establishing that there are no genuine issues of material fact in dispute. See, e.g., Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 572 (2nd Cir. 1993). This standard bars the court from resolving disputed issues of fact. If there are material factual issues, the court must deny summary judgment. See, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2nd Cir. 1986), cert. denied, 480 U.S. 932 (1987).

In evaluating whether there are factual issues, the court is to view the evidence in the light most favorable to the non-moving party and draw all permissible inferences in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). (citing from Allah v. Cox, 96-CV-1225 (2nd Cir. 1998)), "... The non-movant may defeat summary judgment by showing that there is a genuine issue for trial," see, Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "Futhermore, the non-movant will have his allegations taken as true, and will receive the benifit of the doubt when his assertions conflict with those of the movant." Samuels v. Mockry, 77 F.3d 34, 36 (2nd Cir 1996). [Also] assessments of credibility, conflicting versions of events, and the weight to be assigned to evidence are for the jury, not the court. See, Anderson v. Liberty Lobby, Inc., @ 255.

## (A) DEPUTY JOHNSON DEPRIVING LOGUE OF HIS PRESCRIPTION EYEGLASSES VIOLATED THE EIGHTH AMENDMENT.

The Eighth Amendment prohibits the deprivation of prescription eyeglasses under Section 1983, and "could [also], constitute a violation of his right to be free of cruel and unusual punishment". See, Mitchell v. Maynard, 80 F.3d 1433, 1439 (10th Cir. 1996). And the "unnecessary and wanton infliction of pain", see, Whitley v. Albers, 475 U.S. 312, 319 (1986). Analysis of these claims contain both objective and subjective inquiries. An official's conduct violates the Eighth Amendment when (i) the conduct is "objectively, sufficiently serious," and (ii) the - official acts with a "sufficiently culpable state of mind." SEE, e.g. Farmer v. Brennan, 511 U.S. 825, 834 (1994) (Internal quotation marks omitted). This analysis is also required by the U.S. Supreme Court in Estelle v. Gamble, 429 U.S. 97, S.Ct 285, 50 L.Ed.2d 251 (1976). That "deliberate indifference" — purposely ignoring the "serious medical needs" of prisoners — amounts to "cruel and unusual punishment" forbidden by the Eighth Amendment. In this analysis, the prisoner must first prove that the harm was "sufficiently serious" (the objective component). And he must also show that the official responsible for the harm knew and ignored "an excessive risk to the inmate's health or safety," (the subjective component).

(a) Deputy Johnsons conduct was sufficiently Serious.

Defendant argues that summary judgment should be granted because (i) Defendant Johnson was not consciously -

indifferent to Plaintiff Logue's medical need for prescription eyeglasses, (ii) Plaintiff Logue has failed to set forth objective evidence of a serious medical need, (iii) Deputy Johnson's confiscation of Plaintiff Logue's broken eyeglasses was objectively or objectionably reasonable, and (iv) Defendant Johnson's claim that the record is devoid of evidence that Plaintiff's alleged headaches resulted from Plaintiff being deprived of his prescription eyeglasses

(i) Deputy Johnson's deliberate indifference in depriving Logue of his prescription eyeglasses was a conscious act that deprived Logue of a (ii) serious medical need.

The Court is satisfied that he had a legitimate medical need for the glasses, as they were prescribed. ((R&R @ 14) Doc. 9) The evidence that the eyeglasses are a serious medical need "is" that they were prescribed. Defendant Johnson consciously did seize all of Logue's property, including both pairs of his eyeglasses. And did not return to Logue his prescription glasses. See, Mitchell v. Maynard, 80 F.3d 1433 (10th Cir. 1996).

The evidence showing that Deputy Johnson, at that time, Knew that Logue's eyeglasses were prescribed, and a 'serious medical need' comes in many known factors to him, and should be seen as relevant factors to the Court. First, the prescription glasses were being utilized at the time they were seized by Deputy Johnson, to provide Logue with proper vision. Second, Deputy Johnson, at that time, had worked as a transport officer at the jail for over four years, transporting state prisoners back and forth from the prison to the jail. And this required him to procedurally admit state prisoners into the jail following the facility's policies to do so. —

Over four years of doing this is enough time for anyone of normal intelligence to gain constructive Knowledge that the prescribed eyeglasses for state prisoners, all look the same. Also, the fact that the eyeglasses that Logue was using and seized by Deputy Johnson were easily recognized as being bi-focals. The Webster's New World Dictionary, Fourth Edition, defines bifocals as, "eyeglasses with lenses having one part ground for close focus and the other for distant focus. Someone who wears and uses bifocals clearly stated, has an obvious vision impairment or a serious medical need for prescription eyeglasses.

And third, the day that Deputy Johnson transported Logue from Georgia State Prison in Reidsville, Ga. to the jail in Savannah, Ga., September 16, 2010, Logue was suffering massive weight loss. The first thing he said to Logue at G.S.P. was, "what happened to you? You've lost alot of weight." Also, it was the first time Deputy Johnson has ever seen Logue using tinted bifocal eyeglasses and fifty pounds underweight; since Logue has been housed at the jail for each of the past four years from that date.

From the above facts, any reasonable and logical conclusion must be in favor of the Plaintiff that, Defendant Johnson had conscious and constructive knowledge that Logue had a serious need for medical care, and that the prescription eyeglasses being tinted, were prescribed by a doctor. And that depriving him of those prescription eyeglasses can only be seen as being done with deliberate indifference, to those serious medical needs. See, Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994), where "[to] satisfy the objective component, a plaintiff must show-

that his medical need is serious, or that the need has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the need for a doctor's attention. For the subjective component, a plaintiff must show that the defendant possessed knowledge of the need for medical care and displayed the intentional refusal to provide that care." (Citations and internal puntuation omitted) (underline added to emphisize).

Logue has claimed within his complaint (Doc. 1) that he was denied medical care for all his medical needs during his time in custody at C.C.D.C. including his headaches. Therefore, there is not any evidence of medical needs that he suffered from there. Only the documents seen in EXHIBIT C that show the medical request forms he submitted and the recomendation from the E.R. physician at Memorial health Hospital, in Savannah, Ga. where he was sent on October-4, 2010.

He has sent formal requests pursuant the Freedom of Information Act (FOIA), 5 U.S.C. Section 552, and the Open Records Act to Rutledge State Prison, where he is in custody, and to Columbus Regional Hospital, where he spent two weeks in November of 2011, (Nov. 14th to Nov. 28th), for all his medical records. (see, EXHIBIT C). But, neither the prison or the hospital have responded. Logue also requests this Court to help him in February of 2012, by issuing a Court Order to that effect and there has been no response.

Logue still hotly disputes Johnson's allegation that he returned any eyeglasses to him on September 16, 2010, and insists that he consciously acted to cause Logue harm.

(iii) Logue's complaint is based on being deprived his prescribed eyeglasses, not on the fact that Deputy Johnson confiscated his alleged broken reading eyeglasses.

The issue concerning the "broken eyeglasses" is only part of the disputed facts. The Defendant, Deputy Johnson allegedly claims that when he seized these eyeglasses they were broken, and Plaintiff Logue hotly ~~this allegation~~ disputes this allegation stating that they were not broken. He further claims that CCDC's mental health counselor, Ms Gordon, gave him those - black, wired framed reading glasses with metal arms or, handles, prior to Logue being sent to prison. And on September 16, 2010 Deputy Johnson seized and broke those eyeglasses. If the eyeglasses were broken prior to Logue being transported to G.S.P. by G.D.C. officers, they would have been confiscated before Deputy Johnson transported Logue to C.C.D.C.

As stated by the Plaintiff, the prescription eyeglasses are the genuine issue in this case, not the broken reading glasses. Although, Deputy Johnson's credibility can be further diminished if Logue is allowed to show evidence that Deputy Johnson did break his reading glasses. To present this evidence, Plaintiff claims that he needs assistance from outside counsel and his request for extension on time for Discovery granted. (see below).

Deputy Johnson's Personnel conduct report from Lt. Barbour for neglect of duty (R.P.D.#1) see section V #9), demonstrates his being lax and that he is not careful or diligent in perspective to his duty or to state prisoners.

Plaintiff's complaint states that the prescription eyeglasses were taken and not returned, and the reading glasses were broke deliberately to cause him harm.

(iv) Plaintiff Logue has diligently sought medical records and the extension of time for discovery.

On the record, Plaintiff Logue has requested an extension of time for discovery due to health issues, (mailed Jan. 25, 2012). And a "notice to Court," (mailed Feb. 13, 2012), concerning Defendants claim that he responded to Plaintiffs request for first set of interrogatories, and first request for production of documents on January 24, 2012. This claim is plainly not true. These documents were responded to on Febuary 8th, 2012, and since mail does not run on fridays at Rutledge State Prison, (R.S.P.), Plaintiff did not receive these reponses until February 13, 2012, after he had mailed his "Notice to Court," in response to Defendants opposition to extension of time for discovery.

Plaintiff immediately requested his second set of interrogatories and requests for admissions on February 16, 2012, because pursuant to Rule 34, of Federal Rules of Civil Proc., and stated on Plaintiffs first and second set of interrogatories, that; "These interrogatories shall be deemed continuing, so as to require supplemental answers as new and different information materializes". Some of the questions in the second set of interrogatories are supplemental to the first.

The point the Plaintiff is making is that he has not had enough time to properly gather necessary information, i.e. (evidence of medical records, depositions, declarations, and/or affidavits of witnesses). Although he has attempted to do so, (see, EXHIBIT C). Even while his time has been limited to do any type of legal research due to the sudden decline of his health. And that for him not to be granted extended time for discovery because of his health issues will prejudice his right to seek legal redress.

(B) Deputy Johnson is not entitled to qualified Immunity.

Plaintiff asserts that qualified immunity does not apply for Deputy Johnson, while he was acting under color of law he deprived Logue of his eyeglasses that were prescribed by a physician. See, Neal v. Bolton, 2008 WL 5156685 @ 18 (N.D. Fla. Dec. 9, 2008). The discretionary authority element is established, see, Bryant v. Jones, 575 F.3d 1281, 1295 (11th Cir. 2009). And a constitutional violation(s) is confirmed by Plaintiff's stated Material Facts herein. And the fact that his rights were "clearly established" at the time of the violation. See, Crosby v. Monroe, 394 F.3d 1328, 1332 (11th Cir. 2004). And these facts are disputed as a genuine issue between the moving and non-moving parties." Once a constitutional violation is found (or it is determined that whether there was one depends on disputed factual issues) and the discretionary action element is established. The test is, do the acts or ommission of acts violate clearly established statutory or, constitutional rights?," Harlow v. Fitzgerald; (Would a reasonable person have known it was an established constitutional right, see, Hope v Pelzer).

Plaintiff has claimed and argued that Deputy Johnson had constructive knowledge of Logue's serious medical needs. "[a]-party that willfully blinds itself to a fact... can be charged with constructive knowledge of that fact." See, United States v. Baxter Int. Inc., 345 F.3d 866, 902 (11th Cir. 2003). Choosing to deliberately disregard, without any investigation or inquiry, everything any inmate says amounts to willful blindness.

"Assessments of credibility, conficting versions of events, and the weight to be assigned to evidence are for the jury, not the Court." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

(C.) Plaintiff did submit and grieve all of his issues in his complaint as required by the Prison Litigation Reform Act, 42 U.S.C. §1997e(a).

Plaintiff has claimed, and shown by the unanswered grievances he submitted, (see, EXHIBIT A), that shows only a part of the tweelve or more grievances submitted, between Sept. 16th, 2010, and Dec. 20th, 2010, that he has, or attempted to exhaust "administrative remedies as are available"; In compliance to 42 USC § 1997e(a). Plaintiff had to file a grievance on a request form as seen in exhibit A and complained of headaches, having been deprived of his prescription glasses. Goebert v Lee County, 510 F.3d 1312, 1324-25, (11th. Cir. 2007), (where the correct forms to exhaust a grievance were not available).

Plaintiff has claimed that the administrative grievance procedure at Chatham County Detention Center is futile due to the fact the facility has an unnamed policey to not allow grievances to be exhausted. He was being denied all of his required mental health medications but knows that the properly stated grievances were not responded to, and only two of his many submitted grievances were answered. And even then, Lt. Mitchell did not allow grievance No: 10-10-0944-2 to be exhausted on appeal. See, Miller v. Tanner, 196 F.3d 1190 (11th. Cir. 1999), holding that grievance decision that stated it was non-appealable need not have been appealed. And, Chatham v. Adcock, 2007 WL 2904117 (N.D. Ga. 2007), "It would be an anomalous result, indeed, if prison officials could foreclose prison inmates from filing civil rights lawsuits in Federal Court simply by depriving them of the means to fulfill a mandatory pre-requisite to doing so." Affirmed, 334 Fed Appx 281 (11th. Cir 2009).

If a careful fact finder would review the grievances in EXHIBIT A, they would find that none of the steps described by Lt Mitchell, see (Aff. Mitchell ¶ 4,), have been utilized. Especially concerning the issues of Plaintiff's complaint.

Logue sent, or felt he had to send his grievances to a higher authority within the jail to get relief. And the second grievance, (and letter he sent with that grievance ~~are~~ is seen in EXHIBIT B), no: 10-10-0944-2 is the second grievance he sent to Major Wilcher, C.C.D.C.'s unofficial policey to not answer grievances — that could lead to a lawsuit — violates the steps described by Lt Mitchell in her sworn affidavit.

Defendant even admits that the Plaintiff filed "several" grievances in his brief in support of his motion for summary judgment on page 3, but only two were responded to, and the one concerning the eyeglasses was one of two sent to Major Wilcher by U.S. Mail. Plaintiff also claims he was in a state of duress when wording and describing his problem due to not receiving any of his prescribed mental health medications at that time. And thought that the jail officials were aware of his visual problems because of his constant complaints since his arrival on Sept. 16, 2012. He claims that he had made it very clear to all jail offials he came in contact to that Deputy Johnson took his prescribed eyeglasses and that he is positive he, and the eyeglasses were on his first grievances in this issue as by name, and that this grievance was mailed to Major John T. Wilcher.

Therefore, Plaintiff's claim is that "... such administrative remedies as are "available" are exhausted"; in compliance with 42 U.S.C. § 1997e(a). In that even though he used the grievance form to make a formal complaint, there was no "available" remedy.

Therefore, the Plaintiff respectfully requests that the honorable Court, after reviewing the above facts, deny the Defendant's motion for summary judgment and allow these genuine issues to be heard by a jury in trial.

Futhermore, I, Clarence R. Logue, Jr., swears that all of the above facts and statements are true to the best of his knowledge.

Respectfully submitted this 28th day of March, 2012,

[signature]

sworn and subscribed before me this 28th day of Mar, 2012
Notary: [signature]
my Commission expires 2-18-14

Clarence R. Logue, Jr., pro se
Rutledge State Prison #290986
7175 Manor Rd.
Columbus, Ga. 31907

## PROOF OF SERVICE

I, Clarence R. Logue, Jr., of the above given address, hereby does certify that I did send this motion by prepaid U.S. mail to the parties listed:

U.S. District Court
P.O. Box 8286
Savannah, Ga. 31412

Chatham County Attorney
P.O. Box 8161
Savannah, Ga. 31412

on this 5th day of April, 2012

signed: [signature]

larence K. Logue, Jr., #290986
Rutledge State Prison
7175 Manor Rd.
Columbus, Ga. 31907



United States District Court
Attn: Clerk's Office
P.O. Box 8286
Savannah, Ga. 31412

Send this one first

al Mail